IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SUNDAY RILEY MODERN SKIN CARE, L.L.C., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-1650 |
| | § | |
| MAESA, | § | |
| | § | |
| Defendant/Third-Party Plaintiff | § | |
| | § | |
| VS. | § | |
| | § | |
| UNIMAC GRAPHICS, L.L.C., | § | |
| | § | |
| Third Party Defendant. | § | |

## OPINION AND ORDER

Pending before the Court in the above referenced cause, removed from state court on diversity jurisdiction and alleging breach of contract and breach of warranties of merchantability or fitness for particular purpose, arising from Defendant Mesa's packaging of Plaintiff Sunday Riley Modern Skincare, L.L.C. ("SRMSC's") skin care and cosmetic products, are the following motions: (1) Third-Party Defendant Unimac Graphics, L.L.C.'s ("Unimac's") motion to dismiss Defendant/Third-Party Plaintiff Maesa's complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) (instrument #15); (2) Maesa's motion to transfer venue under 28 U.S.C. § 1404(a)(included within #24 at pp. 8-17); (3) Maesa's motion to extend discovery deadline (#26); (4) SRMSC's motion for partial summary judgment on its claims against Maesa and on Maesa's breach of contract claims

(#27); and (5) Maesa's motion to compel discovery responses from Plaintiff/Counter-Defendant SRMSC (#33).

A court must find that it has personal jurisdiction over that defendant before it makes any decision on the merits. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623, n.2 (5th Cir. 1999)("Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication."). Moreover, although issues of personal jurisdiction and venue overlap, the Court must first determine whether it has personal jurisdiction over a non-resident defendant, and thus authority to enter a binding order as to any other issue relating to that nonresident defendant, including venue and discretionary transfer under § 1404(a). *Gazian v. Wells Fargo Bank*, 2012 WL 3290915, *2 (N.D. Tex. June 28, 2012), *citing Guidry*, 188 F.3d at 623 n.2. *See also Asevedo v. NBCUniversal Media, LLC*, 921 F. Supp. 2d 573, 591 n.42 (E.D. La. 2012).

Because after reviewing the briefing and the applicable law, the Court finds that it does not have personal jurisdiction over Unimac, Unimac's motion to dismiss should be granted without prejudice to the claims against it being asserted in an appropriate venue[1] and Maesa's motion to transfer is moot.

---

[1] Because Maesa has not yet been found liable to SRMSC, there is no concern about the statute of limitations relating to Maesa's contribution claims against Unimac.

### I.  Nature of the Suit

SRMSC, a Texas limited liability company with a registered office and principal place of business in Houston, Texas, manufactures and sells high quality skin care and cosmetic products through luxury retailers nationwide and directly to individual customers through the internet.  It maintains that its continued success depends upon the quality of the goods and of their packaging.  On September 26, 2011 SRMSC contracted with Maesa, a French corporation, to manufacture and deliver to SRMSC certain custom packaging for SRMSC's products.  Initially the packaging appeared to be satisfactory, and SRMSC paid Maesa $187,000 toward the agreed purchase price of $367,143.38.  SRMSC alleges that subsequently Maesa delivered defective packaging, i.e., the insides of the folded containers were not laminated, resulting in the flaking of the printing ink into the package, and the glue holding the packages together failed.  SRMSC brought suit against Maesa for breach of contract and breach of warranty.

On December 17, 2012 Maesa  filed a Third-Party Complaint (#12) against Defendant Unimac, a corporation incorporated in the State of New Jersey that Maesa asserts is "doing business in the State of Texas."  Unimac manufactured the packaging at issue in this suit.  Maesa asserts claims against Unimac for breach of contract and breach of warranty, allegedly causing the damages for which SRMSC seeks to recover from Maesa.  It seeks contribution under Chapter 33 of the Texas Civil Practice & Remedies Code for Unimac's proportionate responsibility should Maesa be held liable.

Maesa has filed an Amended Counterclaim (#20) against SRMSC for breach of contract in SRMSC's refusal to pay the remaining amount due and owing under the contract, for other work provided, and for misrepresentation.

## II.  Third-Party Unimac's Motion to Dismiss (#15)

## A.  Standard of Review

When a defendant files a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.)(*citing Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)), *cert. denied*, 548 U.S. 904 (2006).[2] Thus here Third-Party Plaintiff Maesa bears the burden of demonstrating that this Court has personal jurisdiction over Third-Party Defendant Unimac.  At the pretrial stage of litigation, if the district court does not conduct a hearing on personal jurisdiction, the plaintiff need only present a prima facie case of personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Felch v. Transportes Lar-Mex S.A. DE CV,* 92 F.3d 320, 325 (5th Cir. 1996);

---

[2] "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law . . . ." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). Where the facts are disputed, the party seeking to invoke the court's jurisdiction bears the burden of establishing sufficient contacts with the forum state by the nonresident defendant to invoke the court's jurisdiction. *Bullion v. Gillespie*, 895 F.2d 213, 216-17 (5th Cir. 1990).

*Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Proof by preponderance of the evidence is not required. *Johnston*, 523 F.3d at 609.[3] When a defendant disputes factual bases for personal jurisdiction, the district court may

---

[3] As the Fifth Circuit explained in *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008),

> Ultimately, the plaintiff must show by a preponderance of the evidence that jurisdiction is proper. Often, the determination of whether this standard is met is resolved at trial along with the merits. This is especially likely when the jurisdiction issue is intertwined with the merits and therefore can be determined based on jury fact findings. In this situation it is often "preferable that [the jurisdictional] determination be made at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits." But this court has said that after a pretrial evidentiary hearing confined to the jurisdictional issue, where both sides have the opportunity to present their cases fully, the district court can decide whether the plaintiff has established jurisdiction by a preponderance of the evidence. [footnotes omitted]

The panel further opined, *id.* at 241.

> If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss. Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavit and supporting materials.

- 5 -

consider the record before it, including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002)(*quoting Thompson v. Chrysler Motors Corp.*, 755 F.3d 1162, 1165 (5th Cir. 1985)), *cert. denied*, 540 U.S. 814 (2003); *Kelly Law Firm, P.C. v. An Attorney for You*, 679 F. Supp. 2d 755, 762 (S.D. Tex. 2009). The court has discretion as to the type and amount of discovery it will allow, but unless there is a full and fair hearing, it should not act as a factfinder and must construe all disputed facts in favor of the plaintiff. *Walk Haydel*, 517 F.3d at 241. On a motion to dismiss under Rule 12(b)(2), uncontroverted allegations in plaintiff's complaint are taken as true, and conflicts between facts in the parties' affidavits must be resolved in plaintiff's favor for purposes of the *prima facie* case of personal jurisdiction. *Johnston*, 523 F.3d at 609; *Kelly Law Firm*, 679 F. Supp. 2d at 762; *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Nevertheless, the court is not required to credit conclusory allegations even if they are uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

Under the federal rules, except where a federal statute provides for broader personal jurisdiction, the district court's personal jurisdiction is coterminous with that of a court of general jurisdiction of the state in which the district court sits. *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*,

- 6 -

249 F.3d 413, 418 (5th Cir. 2001).  A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers personal jurisdiction over that nonresident defendant and if the exercise of personal jurisdiction satisfies due process under the United States Constitution.  *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), *citing Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007).  The Texas long-arm statute, Texas Civil Practice and Remedies Code §§ 17.0421-.045,[4] extends jurisdiction to the limits of the federal due process.  *Schlobohm v. Schapiro*, 784 S.W. 2d 355, 357 (Tex. 1990); *Gonzalez v. Bank of America Ins. Servs., Inc.*, No. 11-20174, 2011 WL 6156856 *3 (5th Cir. Dec. 12, 2011), *citing Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008).  Thus a plaintiff in a diversity action in federal court in Texas[5] need only demonstrate that (1) the defendant purposely availed himself of the benefits and

---

[4] Section 17.042 provides in relevant part,

In addition to other acts that may constitute doing business, a nonres1dent does business in this state if the nonresident:  (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; (2) commits a tort in whole or in part in this state; or (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

[5] *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)("Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.").

protections of the forum state by establishing that the defendant had minimum contacts with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007).

Personal jurisdiction can be either specific or general jurisdiction. *Mink v. AAAA Develop., LLC.*, 190 F.3d 333, 336 (5th Cir. 1999). "Where a defendant 'has continuous and systematic general business contracts' with the forum state, the court may exercise 'general jurisdiction over any action brought against the defendant [regardless of whether the action is related to the forum contacts]." *Luv N' Care*, 438 F.3d at 469, *citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). *See also Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)("General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."), *cert. denied*, 531 U.S. 917 (2000). "[T]he minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992). "[V]ague and overgeneralized assertions that give

no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 610.

If the defendant has relatively few contacts, the court may still exercise personal jurisdiction over that party if the suit "'arises out of' or is related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 & n.8. Furthermore the Fifth Circuit has concluded that specific jurisdiction is "a claim-specific inquiry: 'A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'" *McFadi*n, 587 F.3d at 759, *quoting Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266, 271 (5th Cir. 2006). Moreover, the Fifth Circuit has established a three-step analysis for determining whether specific jurisdiction exists: "'(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there[6]; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts[7]; and (3) whether the exercise of personal jurisdiction

---

[6] Purposeful availment requires a defendant to seek some benefit, advantage or profit by "availing" itself of the jurisdiction. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W. 3d 777, 785 (Tex. 2005).

[7] The litigation must also "result from the alleged injuries that 'arise out of or relate' to those activities." *Guardian Royal Exch. Assurance Ltd. v. English China Clays,*

is fair and reasonable.'" *Seiferth*, 472 F.3d at 271, *quoting Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002).   The minimum contacts review is fact-intensive and no single contact is decisive; "the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court" in the forum.   The defendant 'must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third party.''" *McFadin*, 587  F.3d at 759, *citing Luv N' Care*, 438 F.3d at 470 (*citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)), and *Electrosource, Inc. v. Horizon Battery Tech., Ltd.*, 176 F.3d 867, 871-72 (5th Cir. 1999)(*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).   Thus specific jurisdiction may not be based upon the mere fortuity that a plaintiff is a Texas resident.   *Santander Consumer USA, Inc. v. Shults Ford, Inc.*, Civ. A. No. 3:11-CV-614-L, 2011 WL 2601520, *4 (N.D. Tex. June 30, 2011), *citing Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986).

Once the plaintiff has established that the defendant has minimum contacts with the forum state, the burden shifts to the defendant to show that assertion of jurisdiction would be unfair.   *Walk Haydel*, 517 F.3d at 245.   In determining whether the

---

*P.L.C.*, 815 S.W. 2d 223, 228 (Tex. 1991), *citing Burger King*, 471 U.S. at 472.   For specific jurisdiction, there "must be a substantial connection" between the nonresident defendant's contacts with the forum state and the "operative facts of the litigation."   *Guardian Royal*, 815 S.W. 2d at 229-33.

exercise of jurisdiction is fair and reasonable, the court examines five factors: "'(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.'" *McFadin*, 587 F.3d at 759-60, *quoting Luv N' Care*, 438 F.3d at 473. If the plaintiff fails to establish the existence of minimum contacts with the forum state, the court need not reach the question of whether personal jurisdiction would offend traditional notions of fair play and substantial justice. *Renoir v. Hantman's Associates, Inc.*, 230 Fed. Appx. 357, 360 (5th Cir. 2007).

The mere fact that a party contracted with a resident of Texas is insufficient to establish minimum contacts necessary to support personal jurisdiction. *Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007)("Merely contracting with a resident of the forum state does not establish minimum contacts."); *Cardinal Health Solutions, Inc. v. St. Joseph Hosp. of Port Charlotte, Fla. Inc.*, 314 Fed. Appx. 744, 745 (5th Cir. 2009). Nor does the exchange of communications in the developing and performing of a contract constitute purposeful availment of the benefits and protections of the laws of Texas.[8] *Id.; id.;*

---

[8] If it did, "jurisdiction could be exercised based only on the fortuity that one of the parties happens to reside in the forum state." *Moncrief*, 481 F.3d at 312.

*Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004).   "[P]urchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction."   *Helicopteros*, 466 U.S. at 417.   Moreover jurisdiction may not be based on the fortuity of one party residing in the forum state.   *McFadin*, 587 F.3d at 760.   Mere foreseeability that a party might perform many of its duties in Texas, by itself, does not create personal jurisdiction, although it would support a finding of jurisdiction if it were combined with the fact that "the forum was 'clearly the hub of the parties' activities.'"   *Moncrief Oil*, 481 F.3d at 312-13.

In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), the Supreme Court established the stream of commerce theory of personal jurisdiction.   Prior to that case, courts generally held that where a manufacturer or distributor injected a product into interstate or international stream of commerce and it was reasonably foreseeable that the product would be sold or used in the forum state, and where that product caused injuries in the forum state, that manufacturer or distributor would be subject to personal jurisdiction in the forum state.   4 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, and Adam N. Steinman, *Federal Practice and Procedure* § 1067.4 (3d ed. database updated Apr. 2013).   In *World-Wide*, 444 U.S. at 298, the Supreme Court held that the stream of commerce theory allows the exercise of personal jurisdiction over a nonresident defendant that "delivers its products into the stream of commerce with the

- 12 -

expectation that they will be purchased by consumers in the forum State."  In the products liability context the theory requires foreseeability, i.e., "not the mere likelihood that a product will find its way into the forum State.  Rather it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate of being haled into court there."  *Id.* at 297.

Subsequently in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987), the high court again addressed the stream of commerce theory, but the resulting plurality opinion is reflected in a subsequent split in lower court opinions that continues today.  While the Supreme Court unanimously concluded that the exercise of personal jurisdiction over a Japanese and a Taiwanese manufacturer of parts of a defective tire that caused a motor cycle accident in California was unfair and unreasonable in violation of due process, Justice O'Connor, writing for the plurality and joined by Chief Justice Rehnquist, opined,

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.  Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.  But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into

> an act purposefully directed toward the forum
> State.

*Id.* at 112.

In an opinion concurring in part and concurring in judgment, Justice Brennan, joined by Justices Blackmun, Marshall and White, did not agree with the plurality's interpretation and voiced a less demanding standard:

> Under [the plurality's] view, a plaintiff
> would be required to show "additional
> conduct" directed toward the forum before
> finding the exercise of jurisdiction over the
> defendant to be consistent with the Due
> Process Clause. . . . The stream of commerce
> refers not to unpredictable currents or
> eddies, but to a regular and anticipated flow
> of products from manufacture to distribution
> to retail sale.  As long as a participant in
> this process is aware that the final product
> is being marketed in the forum State, the
> possibility of a lawsuit there cannot come as
> a surprise.  Nor will the litigation present
> a burden for which there is no corresponding
> benefit.  A defendant who has placed goods in
> the stream of commerce benefits economically
> from the retail sale of the final products in
> the forum State, and directly benefits from
> the State's laws that regulate and facilitate
> commercial activity.   These benefits accrue
> regardless of whether that participant
> directly conducts business in the forum State
> or engages in additional conduct directed
> toward that State.   Accordingly, most courts
> and commentators have found that jurisdiction
> premised on the placement of a product into
> the stream of commerce is consistent with the
> Due Process Clause, and have not required a
> showing of additional conduct.

*Id*. at 116-17.

The Fifth Circuit has rejected the "stream-of-commerce-plus" theory put forth by Justice O'Connor in *Asahi. Choice Healthcare, Inc, v. Kaiser Foundation Health Plan of Colo.*, 615

F.3d 364, 373 and n.7 (5th Cir. 2010), *citing Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 420 (5th Cir. 1993).  Instead it has  followed *World-Wide Volkswagen* (and Justice Brennan's more permissive standard for the stream of commerce theory) as the "definitive word" on the application of the stream of commerce theory to products liability cases.  *Id*.  In construing *World-Wide Volkswagen*, which "holds that a state does not offend due process by exercising jurisdiction over an entity that 'delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State,'" the Fifth Circuit has consistently concluded that "mere foreseeability or awareness that the product will ultimately reach the forum state while still in the stream of commerce is a constitutionally sufficient basis for the forum state to exert personal jurisdiction over that defendant.  *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006), *cert. denied*, 548 U.S. 904 (2006).  In *Ruston Gas Turbines*, 9 F.3d at 420, overturning the district court's granting of a motion to dismiss based on Justice O'Connor's "stream-of-commerce-plus" theory, the Fifth Circuit held that a federal district court in Texas could exercise personal jurisdiction over a Minnesota parts manufacturer which had intentionally placed its products into the stream of commerce by delivering them to a shipper, which in turn sent them to a business in Texas because the manufacturer "not only could have foreseen that the products might end up in Texas, [but] it knew as

a fact that the products were going to be delivered to a specific use in Houston, Texas."

A choice of law provision may be a relevant factor for determining purposeful activity directed toward the forum state, but is not necessarily determinative, and standing alone, it is insufficient to confer jurisdiction. *Satander Consumer USA, Inc. v. Shults Ford, Inc.*, 2011 WL 2601520 at *4, *citing Petty-Ray Geophysical*, 954 F.2d at 1069, and *Burger King*, 471 U.S. at 482. The court must examine the quality and nature of the defendant's activities in the forum in their totality to decide whether the defendant purposely availed itself of the privileges offered by the forum state. *Id., citing Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999).

Personal jurisdiction can be waived by an enforceable forum selection clause in which the parties consent to personal jurisdiction in a specified forum. *Burger King*, 471 U.S. at 473 n.14. Federal law governs the enforceability of forum selection and choice of law clauses. *Haynesworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997), *citing  M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1 (1972), and *Scherck v. Alberto-Culver Co.*, 417 U.S. 506, 518-21 (1974).  Forum selection clauses are presumed to be valid. *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. at 9; *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 537-38 (1995).  A party seeking to bar enforcement of a forum selection clause bears a heavy burden of demonstrating that the clause is unreasonable under the circumstances, i.e., "that the

clause results from fraud or overreaching, that it violates a strong public policy, or that the enforcement of the clause deprives the plaintiff of his day in court." *Bremen*, 407 U.S. at 12-13, 15, 18; *Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33, 35 (5ᵗʰ Cir. 1997).   A party who signs a contract with a forum selection clause has either consented to personal jurisdiction or waived the requirements for personal jurisdiction in a selected forum where the clause was obtained through freely negotiated agreements and is not unreasonable or unjust. *Burger King*, 471 U.S. at 473, 472 n.14.   Nevertheless, the forum selection clause providing for jurisdiction in New York in the contract between Maesa and Unimac in the instant action, asserted in Maesa's motion to transfer, does not relate to the contract claims and counterclaims between SRMSC and Maesa, nor bar SRMSC, a nonsignatory to the latter contract, from bringing its suit against Maesa in Texas.[9]

**B.   Unimac's Motion to Dismiss (#15)**

Supported by a Declaration from George Amann, Unimac's President and Chief Executive Officer, Unimac, a limited liability company organized and existing under the laws of the State of New Jersey with its principal place of business in Carlstadt, New Jersey, insists that contrary to SRMSC's conclusory allegation, it does not do business in Texas and is not qualified to do business

---

[9] Indeed, Maesa removed the suit from Texas state court, contending that venue was proper in Texas.   It reaffirmed that contention in its amended counterclaim against SRMSC.

in Texas.   It is not now and has never been registered to do
business in Texas.   It provides packaging to its customers from
its New Jersey facility.   It has no officers, agents, properties,
employees or place of business of any kind in Texas.   Its officers
and employees do not travel to Texas to conduct business for
Unimac.   It has never owned real or personal property in Texas.
It does not actively seek to do business with Texas-based
companies and does not directly market its products to companies
in Texas.   It has no contacts with Texas to justify a Texas
court's having general jurisdiction over it.   Its invoices for all
goods and services rendered to Maesa state, "All disputes related
to products or services provided by Unimac shall be construed and
enforced in accordance with the laws of the State of New Jersey"
and "[Maesa] irrevocably consents to personal jurisdiction of the
State of New York."[10]

As for specific jurisdiction, Third-Party Plaintiff's
causes of action did not arise from or relate to Unimac's contacts
with Texas.   Unimac represents that the contract between Maesa and
it was initiated by a New York-based Maesa representative
soliciting a New Jersey-based Unimac sales representative.   The
packaging was manufactured at an Unimac facility in Carlstadt, New
Jersey.   The contract between Unimac and Maesa was FOB origin,
i.e., the contract between the parties was complete and liability
passed to Maesa when the goods were delivered to a third-party

---

[10] Unimac states that the invoices are attached as
Exhibit B, but there is no Exhibit B to its motion.

- 18 -

carrier for the benefit of Maesa at Unimac's New Jersey facility.[11]
Unimac did not consent to jurisdiction of any courts located in
the State of Texas.  The contract was not solicited, negotiated or
entered into in the State of Texas and no portion of the goods was
delivered or of the services was performed by Unimac in Texas; the
entire transaction was conducted in the State of New Jersey.

Even if Maesa could show that Unimac had minimum
contacts with Texas, Unimac argues that Maesa's case would still
fail because the Court's assertion of jurisdiction would offend
traditional notions of fair play and substantial justice.  Under

---

[11] F.O.B. or "Free On Board" indicates that title to the
goods and the risk of their loss passed to the person who picks
up the goods or products at the location indicated, in this case
Maesa in New Jersey, and then bears the cost of shipping them to
their final destination, in this case to Texas.  *Charia v.
Cigarette Racing Team, Inc.*, 583 F.2d 184, 188 (5th Cir. 1978).
The Fifth Circuit has acknowledged that F.O.B. is a factor which
the court may weigh in determining whether a defendant has
"minimum contacts" with a forum state.  *Luv N' Care,* 438 F.3d at
471 n.10, *citing Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1136
(5th Cir, 1987)("finding that the 'contact was weakened even
further by the fact that the sale was initiated by the buyer and
was shipped F.O.B. California, the seller's place of business'"
when the forum state was Louisiana), and *Charia v. Cigarette
Racing Team, Inc.*, 583 F.2d at 188-89 ("concluding that F.O.B.
shipment, without more, does not constitute purposeful availment
of the laws of the forum state").  In *Luv N' Care*, the Fifth
Circuit held that personal jurisdiction "'does not depend on the
technicalities of when title passes'; rather, jurisdiction may
attach to both manufacturers who supply their own delivery systems
and to those that make use of the distribution systems of third
parties."  438 F.3d at 471.  Instead it depends upon the party's
contacts with the forum, Texas.  As alleged, Unimac has no office,
place of business, no employees, no property, etc,. in Texas and
has not done business in Texas other than sending to non-Texas-
resident Maesa in Texas boxes which were manufactured and
contracted for elsewhere but that were to be sold by Maesa in
Texas.

the five-factor test[12] in *McFadin*, the factors militate strongly against the exercise of personal jurisdiction over Unimac.  As a New Jersey company that does not do business in Texas, has no contacts with Texas, and all of whose employees and officers are located in New Jersey, Unimac would be heavily burdened if forced to defend in Texas.  For many of the same reasons, the forum state has no interest in Maesa's claims against Unimac

**C.  Maesa's Response (#24).**

With documentary evidence Maesa argues that Unimac took an active role in the business relationship with SRMSC, meeting with its officers to discuss quality control of Unimac's product, and shipping samples of its product directly to SRMSC in Texas, which conduct illustrates that Unimac reasonably expected a Texas company to ultimately receive its product.  Maesa asserts that under the stream of commerce doctrine, a nonresident defendant has "purposefully availed itself of the privilege of conducting activities" in the forum state if it sells its product to an independent distributor and has a "reasonable expectation that the product will enter the forum state."  *Kawasaki Steel Corp. v. Middleton*, 699 S.W. 2d 1999, 201 (Tex. 1985), *quoting Oswalt v. Scripto, Inc.*, 616 F.2d 191, 201 (5th Cir. 1980).  Moreover Maesa insists that Texas's exercise of personal jurisdiction over Unimac

---

[12]   "'(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.'"  *McFadin*, 587 F.3d at 759-60.

would not violate due process because it has a relationship with
Texas based on these communications and delivery of the products
to SRMSC.  Ex. B and D.

      Furthermore Unimac knew there were potential problems
with the product it was manufacturing.  In an email between Unimac
employees (Ex. D at 017), one employee asks whether the other
"anticipates any problems with gluing" on the product to be
shipped to Texas, while another indicates that the base of a make-
up carton is crooked.  Ex. B, email from Sheena Schwindt to Terry
Haeseker, dated Aug. 1, 2011.

**D.  Unimac's Reply (#25)**

      Unimac insists that the stream of commerce theory does
not apply to this case for several reasons.  First, in *Loumar,
Inc. v. Smith*, 698 F.2d 759 (5th Cir. 1983), which Unimac argues
controls in the case before this Court, Plaintiff Loumar, Inc., a
Texas-based company that sold aircraft parts to federal agencies,
contracted with Defendants Charles and Michael Smith d/b/a as S&S
Supply, a Maryland-based company, to fill an order of helicopter
parts for Loumar's client, the U.S. Coast Guard.  The Smiths
shipped the parts directly to Loumar's Texas operation F.O.B.
Maryland, and Loumar then delivered them to the Coast Guard, which
rejected them as defective.  Loumar sued the Smiths in Texas
federal district court.  The Smiths moved to dismiss for lack of
personal jurisdiction.  In opposition Loumar argued that the
Smiths had shipped parts to Loumar's Texas operation on five
different  occasions, owned a tract of land in Texas, and

advertised in a national magazine that probably circulated in
Texas.  Loumar contended that therefore the Smiths had placed the
helicopter parts into the stream of commerce and had sufficient
contacts with Texas for it to assert personal jurisdiction over
them.  The Fifth Circuit, affirming the district court's granting
of the Smiths' motion to dismiss for want of personal
jurisdiction, noted with approval the district court's finding
that even though the Smiths had shipped the parts from Maryland to
Texas, the parts were not in the stream of commerce because the
Smiths were not "'utilizing a marketing distribution chain for
multi-state distribution of goods.'"  698 F.2d at 763, *citing*
*Hendrickson v. Reg O Co.*, 657 F.2d 9, 15 (3d Cir. 1981).  It
further determined that the Smiths' "sporadic contacts with Loumar
would not of themselves have [led] the Smiths to anticipate, under
the [*World-wide Volkswagen Corp. v. Woodson*] test 'being haled
into court' in Texas for breach of a contract to supply hub
assemblies from Maryland." *Id*. at 764.  It further concluded, "It
would be manifestly unfair to force the Smiths to come to Texas to
litigate over the quality of hub assemblies shipped from Maryland
under the facts here presented." *Id.*

        Unimac maintains that *Loumar* controls and that its
reasoning applies to this case.  Unimac's contacts with Texas had
been sporadic, with instances of its discussing manufacturing
specifications with SRMSC, and it knew that its goods would end up
in Texas, as did the defendants in *Loumar*.  Nor was Unimac using
a marketing distribution chain for the multi-state distribution of

- 22 -

its goods.  Instead Maesa reached out to Unimac directly to order goods pursuant to specifications in the New Jersey contract. Unimac argues that it could not have anticipated litigating with Maesa in Texas over the quality of its packaging goods under the holding in *Loumar*.

Second, argues Unimac, the Fifth Circuit has declined to extend the stream of commerce theory to purely economic cases, such as the instant suit.  In *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000), the Fifth Circuit pointed out that it had never extended the stream of commerce theory to cases not involving products liability.[13]  In *Alpine View*, the Fifth

---

[13]  This Court notes that the Fifth Circuit actually wrote, "Appellants are correct in noting that we have not, in our decisions dealing with the stream-of-commerce theory, entirely foreclosed its application to cases not involving product liability claims.  We need not decide here whether the theory is, or is not, applicable to a broader range of cases."  *Id.* at 216. Nevertheless it agreed with the district court that the defendants' delivery of their products into the stream of commerce failed to "support a finding of any connection between [their] contacts, the forum state, and [Alpine View's] causes of action," but instead Alpine View's claims arose from the "losses [it] experienced as a result of [the defendants'] alleged actions vis-a-vis the [contract in dispute], not as a result of any contact with a product." *Id.* at 216-17, *citing Ham v. La Cienega Music Co.*, 4 F.3d 413, 416 (5th Cir. 1993), and *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073-74 (5th Cir. 1990).  The Fifth Circuit found that Alpine View had failed to allege that the misconduct occurred in Texas or that the contract at issue was negotiated or executed in Texas.  *Id.* at 217.  Therefore Alpine View failed to meet its burden of establishing a prima facie case that the "'litigation results from the alleged injuries that arise out of or relate to'" the defendants' contacts with Texas.  *Id., citing Burger King*, 471 U.S. at 472.

Moreover the Fifth Circuit, though "reluctant" to do so because "contracting parties have more flexibility to tailor their relationship in view of jurisdictional considerations than do the manufacturer and consumer in a typical products liability case,"

has extended the stream-of-commerce theory outside of products
liability cases where "'the same policy concerns that justify the
use of the stream-of-commerce principle in the products liability
context are present.'"  *Luv N' Care* , 438 F.3d at 472, *citing
Nuovo Pignone, SPA v. STOREMAN ASIA M/V,* 310 F.3d 374, 381 (5th
Cir. 2002).

In *Nuovo Pignone*, the Fifth Circuit summarized, "We have
applied the stream-of-commerce principle to permit the assertion
of personal jurisdiction over nonresident defendants that send a
defective product into a forum.  Where a nonresident's contact
with the forum state 'stems from a product, sold or manufactured
by the foreign defendant, which has caused harm in the forum
state, the court has jurisdiction if it finds that the defendant
delivered the product into the stream of commerce with the
expectation that it would be purchased or used by consumers in the
forum state.'"  *Id*. at 380-81, *citing Bearry v. Beech Aircraft
Corp.*, 818 F.2d 370, 374 (5th Cir. 1987).  Moreover, 310 F.3d at
381 & n.9, the Fifth Circuit observed,

> Where we have been presented with the
> opportunity to extend the [stream-of-
> commerce] principle to other areas such as
> contract or copyright, we have found the
> defendant's delivery of the products into the
> stream-of-commerce to be unrelated to the
> cause of action.  Even where such a relation
> exists, at least one member of the court has
> expressed concern that the public policy
> concerns compelling application of the
> stream-of-commerce principle in products
> liability cases are not present in contract
> cases, where parties have direct contact and
> can structure their relationship in light of
> jurisdictional considerations.  *See Gulf
> Consolidated Servs., Inc. v. Corinth
> Pipeworks, S.A.*, 898 F.2d 1071, 1079 (5th Cir.
> 1990)(Reavley, J. dissenting).

*Id., citing Alpine View*, 205 F.3d at 217 ("declining to apply
stream-of-commerce principle because the plaintiffs had 'failed to
make a prima facie showing that the litigation results from
alleged injuries that arise out of  or relate to' defendant's
contacts with the forum"); *Ham*, 4 F.3d at 416 ("finding that the
defendant's activities, though connecting them to Texas within the
meaning of the stream-of-commerce principle, were insufficient to
support jurisdiction given the 'highly attenuated' relationship
between the litigation and those activities.").  The Fifth Circuit
further found that where a defective product, though manufactured
elsewhere, was shipped to Texas for use in Texas and where the

Circuit opined regarding the proper application of the stream of commerce theory in the Fifth Circuit:

> [W]hen a nonresident's contact with the forum state "stems from a product, sold or manufactured by the foreign defendant, *which has caused harm in the forum state*, the court has specific jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it *would be purchased by or used by consumers in the forum state.* [emphasis added]

*Id.* at 216, *quoting Bearry v. Beech Aircraft Corp.*, 818 F.2d 370 (5th Cir. 1987).  Maesa has not and cannot claim that it was injured as a result of contact with Unimac's packaging.  The third-party complaint asserts only that the packaging Maesa received was not of the quality it expected.

Unimac concludes that the purely economic claims asserted by Third-Party Plaintiff Maesa must be adjudicated in accordance with commercially reasonable practices, the terms of the contract, and the parties that establish their respective rights and responsibilities, all governed by and in accordance with the laws of the State of New Jersey because the contract which Unimac allegedly breached was negotiated, executed, performed, and delivered in New Jersey.

---

defect surfaced in Texas and caused damage in the home forum, "the same public policy concerns that justify use of the stream-of-commerce principle in the products liability are present" and warrant application of the principle because Texas had an interest in providing a forum for that litigation.  *Id.* at 381, citing as examples *Gulf Consolidated*, 898 F.2d at 1073-74 (defendant, a Greek distributor, shipped to a Texas purchaser defective oil casings that were incorporated into pipe and caused damage).

Unimac contends that permitting Maesa, a French corporation with primary sales offices in New York, to drag a New Jersey-based company down to Texas to litigate a breach of contract claim simply because Unimac corresponded with Maesa's client would be contrary to the established principle that "[a] nonresident may permissibly structure his primary conduct so as to avoid being haled into court in a particular state." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1169 (5th Cir. 1985), *citing World-Wide VolksWagen Corp.*, 444 U.S. at 297. Here Unimac structured its business to avoid being haled into court in Texas by performing the contract and delivering the goods in New Jersey. It urges the Court not to expand the stream of commerce theory to Maesa's third-party complaint.

Third, even if the Court were considering expanding the stream of commerce theory to economic cases, this case is not appropriate to do so because the third-party complaint has no relationship to Texas since the contract was negotiated, executed, performed and delivered in New Jersey and if there was a breach by Unimac, it occurred in New Jersey, as did any harm to Maesa when it took possession of the goods. There is no relationship between the litigants (Unimac and Maesa) and Texas. The contract did not require Unimac to deliver goods into Texas, nor did it contemplate Unimac delivering the goods into the stream of commerce for purchase by Texas consumers. It was a commercial transaction negotiated in New Jersey by sophisticated entities located in New Jersey and New York that required Unimac to manufacture packaging

and make it available for Maesa to pick up at Unimac's New Jersey facilities.  Maesa must litigate any alleged nonconformity of the packaging in New Jersey.  Any claimed breach by Unimac and resulting damage to Maesa must have occurred in New Jersey because Unimac manufactured and delivered the packaging F.O.B. at its New Jersey facilities.  Therefore New Jersey law should apply.

Furthermore neither Maesa nor Unimac is a Texas entity. There is no concern that the Texas-based SRMSC, which has sued only Maesa, would not be able to achieve justice if the Court dismissed the third-party action.

Fourth, the affidavits in support of Maesa's opposition to the motion to dismiss do not create an issue of material fact. One affiant, Patricia McDonough, is a Maesa employee (#24, Ex. A); the other, Fabian A. Salz a/k/a Fabian Maclaren, is President of SRMSC.  McDonough states that the employees of Unimac had contact with employees of SRMSC and that it is his "understanding" that Unimac knew its goods would end up in Texas.  This affidavit is deficient because McDonough is not swearing to facts based on personal knowledge, and even if it were admissible, it would not advance Maesa's position because mere knowledge that its goods were going to Texas does not subject Maesa to personal jurisdiction. *Asahi Metal Industry Co. v. Sup. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 105 (1987) .  Salz's affidavit is irrelevant because SRMSC is not a party to the third-party complaint and therefore contact between SRMSC and Unimac is

irrelevant to whether Texas has specific jurisdiction over Unimac for its alleged breach of a contract with Maesa.

Last, subjecting Unimac to personal jurisdiction in Texas would offend traditional notions of fair play and substantial justice because Maesa cannot show that Unimac knew that the goods were going to Texas before it entered into the contract with Maesa.

### E.  Court's Decision

Except where indicated otherwise, the Court agrees with Unimac that under the facts alleged here it lacks personal jurisdiction over Unimac.

First, the Court agrees that the stream-of-commerce theory does not apply here because this is not a products liability case in which the product caused harm to Maesa or others in Texas, but a breach of contract case alleging that Maesa suffered an economic loss because the Unimac's packaging was allegedly not of the quality Maesa expected.  Indeed Unimac did not contract with a resident of Texas, nor did anyone suffer damage to person or property in Texas as a result of the packaging.  The Fifth Circuit "has extended the stream of commerce analysis outside of the products liability contest, but only in cases that cause damage in the forum state arising from the allegedly defective products.

Generally the "economic loss rule" prevents a party that suffers economic damages without harm to his own person or property from recovering in tort.  *Wiltz v. Bayer CropScience,*

*Ltd. Partnership*, 645 F.3d 690, 695 (5th Cir. 2011).  The economic loss rule "helps preserve the distinct functions of tort and contract law by allowing parties to allocate economic risks by contract.  For example, when a defective product malfunctions and causes a purchaser to lose profits but nothing more, that loss 'is essentially the failure of the purchaser to receive the benefit of its bargain,' and the allocation of that loss is the 'core concern' of private contracts and contract law."  *Id.* at 696-97, *citing East River S.S. Corp. v. Transamerica Delaval, Inc.*, 475 U.S. 858, 870-71 (1986).  Maesa did not suffer a tortious injury in Texas, nor did any Texas residents, as a result of the purported defective packaging.

In this case, Third-Party Plaintiff Maesa's injuries, and thus its causes of action, arose out of or related to its contract with Unimac, solicited by a New York-based Maesa representative, negotiated, executed, and performed in New York and New Jersey, relating to defective packaging manufactured by Unimac in New Jersey, pursuant to a contract that was totally unrelated to Texas.

That Unimac might have met with SRMSC's officials regarding quality control or sent samples to SRMSC in Texas, even if there had been a contract between the two entities, is not sufficient to constitute purposeful availment of the benefits, protections, and privilege of doing business in Texas.  *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985)("The exchange of communications between a resident and a nonresident in developing

a contract is insufficient of itself to be characterized as
purposeful activity invoking the benefits and protection of the
forum state's laws.").  Maesa has failed to make a prima facie
case showing that Unimac might reasonably expect to be haled into
Court in Texas, given its lack of contacts with he forum state.
There is no dispute that Unimac had any officers, employees,
places of business, or property in Texas.  There are no
allegations that Unimac advertised nationally or locally.  The
packaging that was shipped to Maesa in Texas was custom-made for
Maesa's special products, and thus not widely sold.

The Court agrees with Unimac that *Loumar* is on point
with the factual allegations here and controls the resolution of
the personal jurisdiction issue.

Even if Unimac had contacts with Texas, it would be
unfair and unreasonable to force it to litigate in Texas.  While
Texas may have an interest in providing redress for any of its
residents that may be injured in Texas by nonresidents' products,
neither Maesa nor Unimac is a resident of Texas and there are no
allegations of such injury to any Texas resident.

Accordingly the Court

ORDERS that Unimac's motion to dismiss Maesa's Third-
Party Complaint against Unimac for lack of personal jurisdiction
(#15) is GRANTED and Maesa's motion to transfer under § 1404(a)
(#24) is MOOT.  The Court further

ORDERS that Maesa's motion to extend the discovery
deadline (#26) and motion to compel discovery responses from

- 30 -

Plaintiff/Counter-Defendant SRMSC (#33) are REFERRED to United
States Magistrate Frances Stacy for resolution.  The Court will
defer ruling on SRMSC's motion for partial summary judgment (#27),
pending Judge Stacy's decision on these two motions.

     **SIGNED** at Houston, Texas, this 12<u>th</u> day of <u> September </u>,
2013.


                        _____
                             MELINDA HARMON
                      UNITED STATES DISTRICT JUDGE